## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ANTHONY MEDINA, JAMES COLANTUONO,
KELVIN CURRAN, WARREN DAVIS, KEVIN
JONES, PETER LOPEZ, CHRISTOPHER
MORRISHAW, AND MICHAEL SMITH,
*individually and on behalf of others similarly
situated,*

                    Plaintiffs,

          -against-

THE NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SERVICES;
BRIAN FISCHER, COMMISSIONER OF THE
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SERVICES;
LUCY BUTHER, ADA COORDINATOR OF THE
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SERVICES;
PATRICK J. GRIFFIN, SUPERINTENDENT OF
SULLIVAN CORRECTIONAL FACILITY;
DARROWD CUNNINGHAM, DEPUTY
SUPERINTENDENT OF PROGRAMS FOR
SULLIVAN CORRECTIONAL FACILITY;
CHRISTOPHER KARSON, ASSISTANT DEPUTY
SUPERINTENDENT OF PROGRAMS FOR
SULLIVAN CORRECTIONAL FACILITY; DALE
ARTUS, SUPERINTENDENT OF WENDE
CORRECTIONAL FACILITY AND KAREN
CROWLEY, DEPUTY SUPERINTENDENT OF
PROGRAMS FOR WENDE CORRECTIONAL
FACILITY,

                    Defendants.

**SECOND AMENDED
CLASS ACTION COMPLAINT
11 Civ. 00176**



## PRELIMINARY STATEMENT

          This is a civil rights action filed by legally blind or severely visually impaired

inmates of the New York State correctional system, challenging prison policies that deprive them

of equal and meaningful access to prison programs, services, and activities because of their

visual disabilities. Among other things, these policies have forced these inmates to walk handcuffed, shackled, and without physical guidance when travelling, prevented them from receiving medical care because of their inability to read the request forms, and left those in disciplinary housing with little more than an ineffective magnifying glass. Anthony Medina, James Colantuono, Kelvin Curran, Warren Davis, Kevin Jones, Peter Lopez, Christopher Morrishaw, and Michael Smith, (collectively "the Plaintiffs")[1] are all legally blind or severely visually impaired inmates, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Each is either a resident of the Sensorially Disabled Unit ("SDU") at Sullivan Correctional Facility ("Sullivan") or a participant in the Sensorially Disabled Program ("SDP") at Wende Correctional Facility ("Wende"). Plaintiffs bring this class action against DOCCS itself, and against DOCCS employees and officers Brian Fischer, Lucy Buther, Patrick Griffin, Darrowd Cunningham, Christopher Karson, Dale Artus, and Karen Crowley, each of whom is sued in only his or her official capacity. Plaintiffs bring claims for violations of Section 504 of the Rehabilitation Act and Title II of the American with Disabilities Act ("ADA") alleging discriminatory denial of access to services, activities' and programs on the basis of their disabilities as a result of Defendants' failure to provide reasonable accommodations for those disabilities. Plaintiffs seek declaratory and injunctive relief and seek relief only with respect to the accommodations at Sullivan and Wende.

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over this action under 28 U.S.C §§ 1331, 1343(a)(3), and 1343(a)(4) because the claims arise under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and under the ADA, 42 U.S.C. § 12132.

---

[1]     This Second Amended Complaint is being filed only on behalf of the aforementioned Plaintiffs and not on behalf of Darrius Reid and Paul Ford, who are unrepresented.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## THE PARTIES

**Plaintiffs/Proposed Class Representatives**

3.      **Plaintiff Anthony Medina** is a legally blind inmate. At the time of some of the events for which this action is brought, Mr. Medina was incarcerated at Sullivan. After he filed this action Mr. Medina was transferred to Wende, where he currently remains incarcerated.

4.      **Plaintiff James Colantuono** is a legally blind inmate. At the time of some of the events for which this action is brought, Mr. Colantuono was incarcerated at Sullivan. After he filed this action, Mr. Colantuono was transferred to Wende, where he currently remains incarcerated.

5.      **Plaintiff Kelvin Curran** is a legally blind inmate. At all times relevant to the claims in this complaint, Mr. Curran has been incarcerated at Sullivan.

6.      **Plaintiff Warren Davis** is currently classified by DOCCS as a severely visually impaired inmate even though he has only a left eye and his vision in that eye is rated at 20/400[2], which should classify him as legally blind. At all times relevant to the claims in this complaint, Mr. Davis has been incarcerated at Sullivan.

7.      **Plaintiff Kevin Jones** is a legally blind inmate. At all times relevant to the claims in this complaint, Mr. Jones has been incarcerated at Sullivan.

8.      **Plaintiff Peter Lopez** is a legally blind inmate. At all times relevant to the claims in this complaint, Mr. Lopez has been incarcerated at Sullivan.

---

[2]    By way of example, a person with a visual acuity measurement of 20/20 can see detail from 20 feet away the same as a person with average eyesight would see from 20 feet. A person with a visual acuity of 20/40 can see detail from 20 feet away the same as a person with average eyesight would see it from 40 feet away. Thus, a larger denominator indicates less visual acuity. The term "blindness" is generally described as central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. 42 U.S.C. § 416(i)(1)(B) (Supp. IV 1986); *see* http://www.law.cornell.edu/socsec/rulings/ssr/SSR90-05.html.

9.    **Plaintiff Christopher Morrishaw** is a severely visually impaired inmate.  Until very recently, Mr. Morrishaw was incarcerated at Sullivan.[3]

10.    **Plaintiff Michael Smith** is a severely visually impaired inmate.  He is currently incarcerated at Sullivan.

**Defendants**

1.    **Defendant DOCCS** is the agency created by the State of New York for the purpose of operating all New York State prison facilities.

2.    **Defendant Brian Fischer** is the Commissioner of DOCCS, and is responsible for the operation and administration of all facilities within DOCCS.  He is sued in only his official capacity.

3.    **Defendant Patrick Griffin** is the Superintendent of Sullivan, responsible for the operation and administration of Sullivan and all units and programs therein.  He is sued in only his official capacity.

4.    **Defendant Darrowd Cunningham** is the Deputy Superintendent of Programs for Sullivan, responsible for overseeing prison programs at Sullivan, providing reasonable accommodations to inmates, and ensuring compliance with DOCCS policies regarding reasonable accommodations.  He is sued in only his official capacity.

5.    **Defendant Christopher Karson** is the Assistant Deputy Superintendent of Programs at Sullivan, responsible for overseeing the provision of prison programs at Sullivan, as well as the provision of reasonable accommodations and compliance with DOCCS policy

---

[3]    As this Complaint was being finalized for filing, counsel learned that Mr. Morrishaw has apparently been transferred from Sullivan to the Upstate Correctional Facility.  Counsel will begin discussions with DOCCS and Mr. Morrishaw immediately regarding returning Mr. Morrishaw to Sullivan or to Wende, as Upstate Correctional Facility does not offer an SDU or SDP facility, and thus does not seem to be an appropriate place of incarceration for Mr. Morrishaw.  Counsel for all parties will promptly advise the Court of the resolution of this issue, and any affect it may have on Mr. Morrishaw's claims.

directives regarding reasonable accommodations for disabled prisoners.  He is sued only in his official capacity.

6. **Defendant Dale Artus** is the Superintendent of Wende, responsible for the operation and administration of Wende and all units and programs therein.  He is sued only in his official capacity.

7. **Defendant Karen Crowley** is the Deputy Superintendent of Programs at Wende, responsible for overseeing prison programs at Wende, providing reasonable accommodations to inmates, and ensuring compliance with DOCCS policies regarding reasonable accommodations.  She is sued in only her official capacity.

8. **Defendant Lucy Buther** is the DOCCS ADA Coordinator, responsible for ensuring that all programs, activities, and services operated by and under the control of DOCCS comply with the Rehabilitation Act and the ADA.  She is also responsible for reviewing all denials of grievances, other complaints, and requests for reasonable accommodation submitted by DOCCS prisoners with sensorial disabilities.  She is sued only in her official capacity.

## FACTUAL ALLEGATIONS SPECIFIC TO EACH PLAINTIFF

9. As set forth herein, Plaintiffs bring this action on behalf of themselves and also on behalf of a class of legally blind or severely visually impaired prisoners who reside in the SDU at Sullivan or are part of the SDP at Wende.

10. Under DOCCS regulations, and as used in this Second Amended Class Action Complaint, a prisoner is "legally blind" if (a) his visual acuity is 20/200 or less in the stronger of his two eyes, measured with best possible correction, or (b) he has a visual field of no greater than 20 degrees in the stronger of his two eyes.  DOCCS Directive 2612 § II.E.  A prisoner is severely visually impaired if (a) his visual acuity is 20/70 or less in the stronger of his two eyes,

or (b) he has a visual field of no greater than 40 degrees in the stronger eye. *Id.* at ¶ II.D. Both legally blind and severely visually impaired prisoners are deemed "inmates with sensorial disabilities" and, under DOCCS directives, "shall be referred for transfer to one of the designated facilities, which can accommodate their needs." *Id.* at ¶ III.C.

11.    As described below, each Plaintiff is substantially impaired, absent reasonable and appropriate accommodations, in his ability to see and read, two major life activities. Most Plaintiffs are also substantially limited in other major life activities including writing and walking.

12.    As described below, each Plaintiff, with or without reasonable accommodations, meets the essential eligibility requirements for receiving services and participating in programs and activities available to New York State prisoners through DOCCS. They also meet the requirements for residing in and receiving the services, programs and activities, and appropriate accommodations of the Sensorially Disabled Units and Programs.

13.    As described below, each Plaintiff is a "qualified individual with disabilities" as that term is defined in the Rehabilitation Act, 29 U.S.C. § 794, and the ADA, 42 U.S.C. § 12131(2). Because of their disabilities, each has been and continues to be denied access to programs, services and activities provided and operated by Defendants.

14.    **Plaintiff Anthony Medina**: Mr. Medina is 34 years old and is legally blind. He has astigmatism and advanced keratoconus, a degenerative eye disorder characterized by structural changes to the cornea that cause the patient's corneas to thin and change to a conical shape, rather than the normal, more gradual curve. Mr. Medina's keratoconus is bilateral, restricting his vision in both eyes and also resulting in photophobia, or intolerance to light. He also suffers from amblyopia, a disorder where visual stimulation fails to transmit or poorly

transmits through the optic nerve to his brain, and is suspected of having glaucoma, or abnormally high fluid pressure in the eye. To read written documents, Mr. Medina requires a device capable of 32X magnification. Mr. Medina is currently incarcerated at Wende. He has spent the majority of his time at Wende either in "keeplock," a disciplinary mechanism in which a prisoner is confined to his cell for more of the day than would be true for a general-population inmate, or in the Special Housing Unit ("SHU"), a disciplinary unit of mostly single-occupancy cells apart from the general population, where prisoners are kept in their cells for 23 hours a day with one hour of solitary recreation. While in keeplock or the SHU, Mr. Medina is denied access to the Resource Room and the law library. Apart from a small magnifying glass which is not powerful enough to permit him to read, Mr. Medina is provided with no additional accommodations in keeplock or the SHU.

15.     Even when he is not in keeplock or the SHU, Defendants do not reasonably accommodate Mr. Medina's disabilities. For example, the type size or font of the DOCCS form for requesting and accessing "sick call" is too small for him to read, requiring him to rely on the assistance of other inmates – when such assistance is even available – to complete forms that ask him to divulge confidential, personal medical information. On at least one occasion, Mr. Medina was unable to receive medical treatment for a skin laceration because there was no other inmate able to help him fill out the sick call forms. By failing to accommodate his disabilities, Defendants are effectively denying Mr. Medina full and equal access to medical care, as well as to the numerous other services that require him, and the other Plaintiffs, to complete a prescribed form available only in small print.

16.     Mr. Medina is also denied adequate accommodations that would allow him to perform legal research and draft legal documents. Even when he is not in the SHU or keeplock,

the law library does not contain devices sufficient to allow him to perform legal research, given his visual impairment. The inadequate facilities at the law library place Mr. Medina in constant peril of not meeting court-ordered deadlines.

17.    Due to his disabilities, Mr. Medina has been denied access to recreation programs equal to those provided to non-disabled prisoners. The only exercise opportunities afforded to Mr. Medina, and the other legally blind and severely visually disabled, are during the same time and in the same place as non-disabled prisoners, exposing him to danger from the weight-lifting equipment used by other inmates and from the proximity to exercising inmates whom he cannot see.

18.    Mr. Medina was told in July 2011 that he would receive more powerful contact lenses, which he needs. He did not receive them, but nevertheless DOCCS reclassified him as being severely visually impaired, rather than legally blind.

19.    **Plaintiff James Colantuono:** Mr. Colantuono is 51 years old and is legally blind. He has diabetes-related macular degeneration in both eyes, a condition of the retina that causes a loss of vision in the center of his visual field. This makes it difficult or impossible for him to read, or to recognize faces.

20.    Mr. Colantuono needs a device capable of 7X magnification in order to read. He has not been provided such a device at Wende, and instead has been given only a small magnifying lens and a "sheet" magnifier, neither of which is powerful enough to let him read. Like Mr. Medina, Mr. Colantuono cannot read and complete the sick call form without the assistance of another inmate, thus requiring Mr. Colantuono to trade his privacy away in order to access health care. He also cannot read or complete the forms needed to file grievances under prison grievance procedures, or the form needed to make prison commissary purchases. By

failing to accommodate his disability, Defendants are effectively denying Mr. Colantuono full and equal access to medical care, the grievance system, commissary services, and the numerous other services that require him, and the other Plaintiffs, to complete a prescribed form available only in small print.

21.     In addition, Mr. Colantuono needs sunglasses for glare reduction and adjustment to outside light; while an eye specialist at Sullivan recommended that he be provided with wide sunglasses with covered sides, he has not received them.

22.     **Plaintiff Kelvin Curran:** Mr. Curran is 46 years old, and is legally blind. He, too, has macular degeneration, as well as retinitis pigmentosa, a type of retinal dystrophy that causes progressive vision loss and, ultimately, incurable blindness.

23.     Sullivan's Resource Room includes two computers capable of enlarging images so that Mr. Curran could read them. But because one computer is dedicated to legal research and because of the sheer number of inmates who access the Resource Room, these computers are often unavailable to Mr. Curran. He is therefore unable to read his personal correspondence. In addition, there is no audio program available to assist or instruct Mr. Curran on how to use this equipment. Mr. Curran has asked to be instructed in Braille, but the Defendants have denied this request and there are no Braille instruction books in large print available for him to teach himself. As a result of these failures to accommodate his disability, Mr. Curran is excluded from any facility programs, activities, and services that require the ability to read.

24.     **Plaintiff Warren Davis:** Mr. Davis is 28 years old, has a prosthetic right eye, and is currently classified at Sullivan as severely visually impaired even though his vision is rated at 20/400 in his left eye, which should classify him as legally blind. He received his erroneous reclassification from legally blind to severely visually impaired around the time of his

transfer to Sullivan. He has advanced keratoconus in his left eye. While his vision is partially improved through the use of a contact lens, he still has difficulty seeing even with this correction.

25.     In theory, Mr. Davis has been assigned to GED classes as an educational program. But the books for the GED program are not available in print large enough for him to read them. The pre-test forms and test forms for the GED are available in enlarged format, but they too are not large enough for him to read them. Mr. Davis has requested additional time to complete the GED exam to accommodate his vision impairment, but that request was denied by a Sullivan educational coordinator. Due in part to Defendants' failure to provide accommodations in the program, Mr. Davis failed the GED test.

26.     Mr. Davis is also denied sufficient access to the Resource Room, because it is available during program hours when he is often assigned elsewhere, either to the GED program in the morning and to a work assignment in the afternoon. By failing to provide him with accommodations in the form of adequate access to the Resource Room, Defendants are denying Mr. Davis the use of equipment that would enable him to study and read. Mr. Davis has also asked to be instructed in Braille, but was informed that Braille instruction is not available at Sullivan and there are no Braille instruction books in large print available for him to teach himself.

27.     **Plaintiff Kevin Jones:** Mr. Jones is 46 years old, and is legally blind. He suffers from diabetes, glaucoma, and optic nerve damage. Complications of his diabetes have impaired his vision, which continues to deteriorate.

28.     Mr. Jones needs access to eye specialists outside of Sullivan. His access to those and other medical specialists is inappropriately restricted because Defendants refuse to provide him with accommodations, like mobility aides to escort him from the prison vehicle to the

transport vehicle, and from the transport vehicle to the medical clinic area. Defendants require Mr. Jones, a blind man, to walk through the Sullivan building towards the vehicle while shackled and without any physical guidance. In May or June, 2010, Mr. Jones was transported – without a mobility escort – for an eye clinic appointment at Coxsackie Correctional Facility. During the walk to and from the vehicle, Mr. Jones was vulnerable and at risk of falling. Since that time, Mr. Jones has refused to be transported for outside medical trips without a mobility guide or other appropriate escort because of the fear of physical injury. By denying his request for accommodations during transport, Defendants have effectively denied access for Mr. Jones to needed medical care and services.

29.     Like Mr. Davis, Mr. Jones was assigned to the GED program but was unable to meaningfully access the program because of Defendants' failure to accommodate his disability. Large print instructional materials and tests were not provided, and devices for enlarging the materials were not available to him. The Sullivan educational coordinator, Dr. Woods, and the GED teacher, Mr. Catorci, both advised Mr. Jones that an enlarging device would be provided for visually impaired GED students, but no such device was provided. Because of his inability to read the instructional materials, Mr. Jones withdrew from the GED class.

30.     Like Mr. Coluantono, Mr. Jones cannot read the form needed to make prison commissary purchases because of Defendants' failure to provide the visually impaired prisoners with large print documents or with documents otherwise tailored so as to be legible. By failing to accommodate his disability, DOCCS is effectively denying Mr. Jones full and equal access to the commissary program as well as access to medical care, the grievance system, and the numerous other services that require him, and the other Plaintiffs, to complete a prescribed form available only in small print.

11

31.     Mr. Jones is denied access to the law library program and services because there is only one computer in the law library for use by approximately twenty visually impaired or legally blind inmates. Because it is the only device capable of enlarging the text of legal research materials, adequate access to this computer is essential for ensuring adequate, meaningful access to the law library for blind and visually impaired inmates.

32.     Mr. Jones is also severely restricted in his ability to access recreational programs, because the visually impaired are offered sheltered gym recreation only once a week, and must share this time and space with non-disabled inmates.

33.     **Plaintiff Peter Lopez**: Mr. Lopez is 36 years old, and is legally blind. He suffers from vitelliform macular dystrophy, a degenerative, genetic disorder – also known as "Best's disease" – that causes progressive vision loss by affecting the cells in the macula, the center of the retina. Mr. Lopez's vision is now almost exclusively peripheral. Using his peripheral vision to focus on the details of objects in front of him causes him pain in as little as five minutes. He therefore cannot read or write without significant, painful eye strain and a burning sensation in his eyes, often followed by severe headaches. He also suffers from photophobia. Mr. Lopez has received accommodations that are of no use to him because they are issued without regard to his particular condition and needs. For instance, he must use sunglasses because of his photophobia. Defendants issued him sunglasses through the SDU coordinator, but they are designed to exclude peripheral light; given his macular dystrophy, glasses that exclude peripheral light make it impossible for him to see at all. There are sunglasses available that would address his light sensitivity without impeding his peripheral vision, and Mr. Lopez's doctors have prescribed them, but the SDU staff have told him that he must either use the peripheral-light-blocking sunglasses he was given or use no sunglasses at all.

34.     Mr. Lopez is also denied meaningful access to devices that would allow him to read legal papers, conduct legal research, and draft legal documents relating to his several pending actions. While in keeplock, he is provided with only a magnifying glass, which is of no use to him given his condition. Even outside of keeplock, he is not provided with adequate resources. Mr. Lopez needs to use the scanning devices in the Resource Room to read legal cases and other legal research that he printed in the law library. Unfortunately, Defendants fail to open the Resource Room and law library consistently for a sufficient number of hours. Further, the devices in the Resource Room and the law library are too few in number, too limited in capability, and too restricted in availability to accommodate his visual impairments. Likewise, the accommodating devices are insufficient to allow Mr. Lopez proper access to his personal, non-legal mail because he needs the help of the devices to both read and write personal mail. And Mr. Lopez, like the other Plaintiffs, is unable to read and/or complete the prescribed prison forms, which are required in order to participate meaningfully in prison programs such as the disciplinary and grievance process. Mr. Lopez cannot read the disciplinary notices, nor can he read responses to grievances or written results of disciplinary hearings, so he is unable to understand what he can appeal, whether he should appeal, how to appeal, and, if advised by another prisoner of the content of the decision, he cannot draft an appeal without the help of accommodating devices or another prisoner.

35.     Mr. Lopez is also unable to read posted notices and alerts, and has missed news, schedules, call-outs and other important notices concerning DOCCS programs, activities and services. By failing to accommodate his disability, Defendants effectively deny Mr. Lopez full and equal access to the grievance system, the law library, and the numerous other services that

require him, and the other Plaintiffs, to read a notice or complete a prescribed form available only in small print.

36.    Nor can Mr. Lopez participate meaningfully in the recreational, educational, and vocational programs offered to non-disabled inmates, because Defendants do not make reasonable accommodations for his disability.

37.    **Plaintiff Christopher Morrishaw:** Mr. Morrishaw is severely visually impaired. He has advanced, degenerative keratoconus and glaucoma affecting both eyes. He often sees multiple "copies" of people and things before him, and has trouble seeing objects – even large ones – that are more than a foot away. He has decreased peripheral vision and can read documents, if at all, only by placing the text a few inches from his eyes. Even at that distance, Mr. Morrishaw has trouble reading with his right eye. He has great difficulty hand-writing documents and cannot read handwritten text, even when it is magnified to a larger size. He is also photophobic.

38.    Mr. Morrishaw derived some benefit from eyeglasses, but his glasses were broken over two months ago and have not been replaced; a cornea specialist recommended that he be fitted for hard contact lenses instead, but those have not been provided to him, in part, because he has been told that he has not yet sufficiently recovered from cornea surgery and his remaining stitches prevent the use of contact lenses. He has therefore been without eyeglasses or contact lenses for over two months as of the date of this Second Amended Class Action Complaint.

39.    Mr. Morrishaw has a pending legal appeal and needs access to accommodations that will allow him to research his appeal and draft legal documents. He also has pending visitation proceedings in family court and must be able to complete and submit paperwork to the court. Mr. Morrishaw was provided with a magnifying glass to read documents, but this

accommodation was provided to him without regard for his particular needs; a magnifying glass is not an adequate accommodation for his condition. Additionally, Mr. Morrishaw has been provided access to a CCTV, a device that magnifies text of documents, yet Mr. Morrishaw is unable to use this device because of the bright light that it emits.

40.     Mr. Morrishaw has experienced difficulties accessing the Resource Room and the law library to work on his legal documents. On several occasions, he has been told by Mr. Peter Cohen, SDU Resource Room teacher, that the Resource Room was full, and he was turned away. As a result, Mr. Morrishaw has been unable to work on his legal cases and is in constant risk of missing deadlines. Mr. Morrishaw has requested a typewriter to use in his cell when the Resource Room is not open. His request was denied and the Sullivan Superintendent at the time responded to his grievance by stating that "typewriters are not a reasonable accommodation."

41.     Mr. Morrishaw was enrolled in GED classes but was never given equal or meaningful access to the program, because Defendants failed to adequately accommodate him. Like several other Plaintiffs, he was not provided with large print books, nor was he given more time on tests or assignments. Homework and other information was often written on the chalkboard, where he was unable to read it. He was not provided with alternative ways of receiving this information, such as a printed documents in large font or in an audio format. Mr. Morrishaw asked for books with large text, but his request was denied.

42.     Mr. Morrishaw cannot access a number of additional prison services because of the unavailability of large print forms necessary to request or access these services. He is denied meaningful access to disciplinary proceedings because misbehavior reports are written in print too small for him to read. Mr. Morrishaw has not been able to adequately access and participate in the grievance program because he is unable to hand-write the grievances, and no

accommodations have been provided for him to physically write the grievances. By failing to accommodate his disability, DOCCS is effectively denying Mr. Morrishaw full and equal access to the discipline program, the grievance system, and the numerous other services that require him, and the other Plaintiffs, to complete a prescribed form or read a notice available only in small print.

43.    Mr. Morrishaw does not have meaningful, equal access to adequate or appropriate recreational activities because of the Defendants' failure to accommodate his disability. He would like to learn Braille, but has been told that Braille instruction is not available at Sullivan, and there are no Braille instruction books in large print available for him to teach himself.

44.    When Mr. Morrishaw is transported to his outside medical appointments, he is shackled in leg irons and he is not provided the assistance of a mobility aide. As a result, Mr. Morrishaw's ability to safely navigate to and from medical appointments is severely limited. Oftentimes, these leg irons are secured so tightly that Mr. Morrishaw is unable to walk at all. Mr. Morrishaw has refused to attend medical appointments due to his fear of serious bodily injury from tripping and falling while trying to walk in shackles without a mobility aide. Because he has been denied his requests for accommodations during transport, Defendants have effectively denied Mr. Morrishaw equal and adequate access to needed medical care and services.

45.    **Plaintiff Michael Smith:** Mr. Smith is 40 years old, and is severely visually impaired. He has bilateral degenerative myopia, a hereditary condition characterized by marked changes of the interior surface of the eye that impair the eye's ability to focus. Mr. Smith's condition is essentially an extreme form of nearsightedness. He also suffers from nystagmus, a continuous and involuntary lateral movement of his eye, which causes blurred vision.

46.     Mr. Smith wears corrective eyeglasses, but they do not significantly improve his vision. To read or write, Mr. Smith must hold the document very close to his eyes. As is true for the other Plaintiffs, Mr. Smith cannot read or complete many of the forms used in Sullivan because the text is too small for him. For example, he cannot read the call-out sheets that alert prisoners to medical and other appointments, and has missed appointments when he could not find someone to read the sheet to him. This is a significant problem in prison: missing a medical call-out may result in a disciplinary infraction. By failing to accommodate his disability, Defendants are effectively denying Mr. Smith full and equal access to the medical care system, the grievance system, and the numerous other services that require him, and the other Plaintiffs, to complete a prescribed form or read a notice available only in small print.

47.     Mr. Smith sometimes uses a magnifying glass to read and write documents, but can do so for only short periods given the effort involved in holding a magnifying glass while also holding the document inches from his face. Mr. Smith is currently working on an appeal of his conviction, and requires the use of the law library to research and draft his submissions. Due to the limited space and resources in the law library, Mr. Smith is often unable to access a computer, and is therefore unable to work on his appeal. He faces a constant risk of missing court imposed deadlines as a result of this lack of resources.

48.     Mr. Smith has also experienced the same problems in using the Resource Room that other Plaintiffs have experienced: the Resource Room is often closed, and has insufficient computers given the significant demand from the inmate population.

49.     Mr. Smith has also experienced the same problems with the recreational facilities as have other visually impaired inmates: there are no accommodations for the visually impaired such as vision-impaired-appropriate recreational equipment, and he is and has been forced to

exercise in proximity to sighted inmates who are lifting weights which is quite dangerous and serves as a barrier to full and equal access to recreation.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

50.    The specific experiences of the eight named Plaintiffs may differ somewhat due to the extent of each individual's impairment as well as their particular need or desire for a specific program, service, or activity. But the problems encountered by the named Plaintiffs are common to the population of legally blind and severely visually impaired inmates incarcerated at Sullivan and Wende, and they illustrate a pattern of Defendants' failure to accommodate, creating a denial of access that is wholly improper under the disability laws.

### Sensorially-Disabled Units and Sensorially-Disabled Programs

51.    In addition to those at Sullivan and Wende, DOCCS operates SDUs and SDPs within Eastern Correctional Facility, Woodbourne Correctional Facility, and Wyoming Correctional Facility.

52.    When an inmate with sensorial disabilities, including legal blindness or severe visual impairment, is received into DOCCS custody, the inmate is supposed to be transferred to a facility with an SDU or SDP, in order to accommodate his needs. *See* DOCCS Directive 2612 ¶ III.C. Prisoners with sensorial disabilities may be transferred from an SDU or SDP in one facility to an SDU or SDP in another facility at DOCCS's discretion.

53.    Sullivan is a maximum-security facility that has an SDU to accommodate sensorially disabled inmates. According to DOCCS Directive 2612, if a needs assessment was not conducted prior to the inmate's arrival at Sullivan, Sullivan staff are responsible for completing a needs assessment based on the functional ability, vocational skills, and academic level of blind and severely visually impaired inmates. Needs assessments are to be updated as an inmate's sensorial disabilities change. Staff are responsible for making placement and program

18

recommendations, and final determinations regarding the provision of reasonable accommodations. The sensorially disabled inmates are housed together in the same unit.

54.    Wende is a maximum-security facility that has an SDP to service sensorially disabled inmates. According to DOCCS Directive 2612, if a needs assessment was not conducted prior to an inmate's arrival at Wende, Wende staff are responsible for completing a needs assessment based on the functional ability, vocational skills, and academic level of blind and severely visually impaired inmates. Needs assessments are to be updated as an inmate's sensorial disabilities change. Staff are responsible for making placement and program recommendations, and final determinations regarding the provision of reasonable accommodations.

55.    DOCCS prisoners who are not blind or severely visually impaired are offered the opportunity to participate in programs services and activities, including educational programs, vocational classes, work programs, law library, and recreational programs. The non-disabled prisoners are also afforded access to health services and a grievance system through which a prisoner is allowed to object to a particular prison practice or situation. As described below, however, the programs, activities, and services comparable offered to those in the general population are not offered on a comparable basis, or are not accessible to, visually impaired inmates in the Sullivan SDU and the Wende SDP.

**Transportation and Movement**

56.    As described above, Defendants fail to accommodate vision disabilities by making safe transportation available to visually impaired prisoners for trips outside the prison.

57.    At Sullivan, inmates who use canes may not take the canes outside of the prison, and are not permitted other mobility aids to assist them outside the prison. When they leave the

prison, all prisoners – including the visually impaired – are shackled, and are not assisted by staff in getting safely from the prison to the transport vehicles. Though mobility aides are provided for prisoners in some situations, legally blind and severely visually impaired prisoners are not allowed to use mobility aides when being taken to outside medical appointments. This creates a real risk, to say nothing of a serious fear, of falling and being injured.

58.    Similarly, when blind and visually impaired prisoners are taken to SHU, they are handcuffed behind their backs and not allowed canes or other mobility aids, also creating a risk of injury.

**Legibility of Documents**

59.    Access to many DOCCS programs, services, and activities is dependent on the prisoner being able to use certain prescribed forms, and other documents. Requests for services must be made in writing and are often granted or denied in writing. The legally blind and severely visually impaired inmates at Sullivan and Wende need the same access to these documents as non-disabled inmates. But at Sullivan and Wende, all manner of documents – including disbursement forms, sick call slips, uniform-repair forms, commissary forms, law library slips, disciplinary appeal forms, disciplinary disposition sheets, property disposal forms, and grievance forms – are not provided to legally blind and visually impaired inmates in large print, or recorded on audio, or some other accessible and usable format. The lack of large print, or audio versions of these documents renders these materials unreadable and unusable for these inmates.

60.    Because many of the programs, services, and activities offered or provided by DOCCS can be accessed only by written request, the lack of accessible documents renders numerous programs, activities, and services unavailable to the Plaintiffs. For instance, a prisoner

may seek medical care through "sick call" at the clinic only if he has submitted a "sick call form" to a member of staff. The law library, too, is accessed through a written request. For inmates on keeplock status or in the SHU, legal materials may be received only on written request. Food from the commissary is available only through written request, but there is no large-print, audio, or other accessible version of the sick-call, law library, or commissary request forms. And, as described above, the prisons do not provide large-print, audio, or other appropriately accessible versions of the books needed for inmates to study for their GED exams, and have specifically denied requests for accessible version of the books.

61.     Likewise, inmates often learn of the availability of other services only through announcements posted in housing areas, illegible to the legally blind or severely visually impaired. This is true even when the announcement is posted in the SDU housing area or in other areas used predominantly by the legally blind and severely visually impaired. As a result, the legally blind and visually impaired prisoners do not have equal and meaningful access to the programs and services that notify prisoners through posted notices.

**Discipline Process**

62.     Sullivan and Wende have regulated disciplinary procedures, whereby prisoners will be notified in writing of disciplinary violations (the "ticket" or "misbehavior report") and provided the opportunity to contest such charges. Defendants fail to provide adequate accommodations to visually impaired prisoners in the disciplinary process. As a result, because of their disabilities, the legally blind and visually impaired prisoners at Sullivan and Wende do not have equal, meaningful access to the process by which they can defend themselves against unfair or inaccurate disciplinary charges. These barriers to access for the legally blind and severely visually impaired prisoners include:

a)      Defendants' failure to provide misbehavior reports identifying the charge and instructions for the inmate, in a large, readable format;

b)      Defendants' failure to provide adequate assistance in preparing for disciplinary hearings or during the hearing itself; and

c)      Defendants' failure to provide access to assistive devices that would allow the inmate to read documents to aid in his defense.

**Educational Programs**

63.    All prisoners at Wende and Sullivan are provided the opportunity to attend GED classes and other educational programs. As noted above, the materials for these classes are not offered in formats accessible to the visually impaired inmates. But this is not the only way in which visually impaired inmates are denied meaningful access to GED classes. Defendants do not make assistive devices available in the classroom for use by visually impaired inmates who need them. And Defendants have denied inmates' requests to provide large-font handouts instead of writing on a chalkboard, and refuse to let inmates take the exams orally or let them have more time to complete printed exams.

**Access to and Sufficiency of the Resource Rooms**

64.    At both Wende and Sullivan, DOCCS provides "Resource Rooms" for severely visually impaired and legally blind prisoners in the SDU and SDP. These Resource Rooms contain devices intended to help the visually impaired and legally blind read and draft letters, books, and other documents. These inmates require sufficient, regular access to these devices, and therefore to the Resource Room, in order to access a number of other programs, services, and activities such as personal and legal mail, legal research, and general library resources.

65.    The Resource Rooms are not open and available a sufficient amount of time to accommodate all the disabled prisoners who wish to use them. They are available only during weekdays in two "modules" (three-hour blocks of time, morning and afternoon at Sullivan, and two-hour blocks of time, morning and afternoon at Wende). Prisoners who are out of the housing unit during the day for programs or other purposes do not have access to the Resource Room. Further, if a SDU/SDP prisoner must retrieve his medication from the medication window, attend a clinic appointment, attend another program, or attend some other event at the beginning of a module, they will not be able to access the Resource Room that day, because staff will not allow entry into the room after a specified time.

66.    The Resource Rooms are not even available consistently during the posted hours. On some days, the rooms are not open at all because the designated instructor is otherwise occupied or unavailable. At Wende, the Resource Room is regularly used by staff to hold other meetings, and visually impaired inmates are excluded from the room at those times. There is generally no advance warning given to prisoners about when the Resource Room will be closed during a given week.

67.     When the Resource Room is open and accessible, Plaintiffs often cannot make use of the devices because there are not enough of them to meet the needs of all the visually impaired prisoners.  This problem is exacerbated by the limited hours the room is open, and by the fact that when the machines break, they often go without repair for long periods of time.

**Ability to Create Printed Documents**

68.     Visually impaired prisoners require meaningful access to equipment, devices, or other means to create typed or printed documents so that they can fully participate in DOCCS services, programs, and activities.  They find it difficult or impossible to hand-write documents, a disadvantage that non-visually impaired prisoners do not share.  Non-disabled prisoners can take notes from law books and review those notes later in their cells; they can also physically take the books back to their cells.  Visually impaired prisoners, in contrast, rely on the use of a printer that will allow them to print large type documents if they want to be able to read them.  This need is heightened especially if they want the ability to read the printed documents when the Resource Room is closed.

69.     Printing out documents in a large font uses more paper than printing the same document in a smaller font.  Despite the difference, visually impaired prisoners are held to the same paper limitations as are non-disabled prisoners, and are therefore unable to print as much material as non-disabled prisoners.

70.     Prisoners at Wende and Sullivan are provided typewriters for use in their cells (Sullivan prisoners must pay for theirs), but the type and the keys on the typewriters are too small for the legally blind or severely visually impaired to use them.

24

**Law Library**

71.    Prisoners at Sullivan and Wende are provided access to a law library to allow them to perform their legal work and research.  The same law library is used by all prisoners, including the visually impaired prisoners and the general population.  As described above, and set forth in more detail below, Defendants do not provide reasonable accommodations to visually impaired prisoners in the law libraries.  Thus:

    a)    Defendants fail to make important documents, including forms, available in large type or other accessible format;

    b)    The prison law libraries no longer contain bound case reporters.  Instead, case-law-dependent legal research must be done on a computer.  But there is only one computer in each law library for legal research, and another one for preparing documents.  All prisoners at Wende and Sullivan, including the non-disabled, share these computers.  This scarcity of resources disproportionately impacts the visually impaired, because they have difficulty writing by hand and must use the computer not only for research but for note-taking.

    c)    At Wende, the device intended to read aloud from printed text is not connected to a monitor and is known to misread the text, specifically garbling case citations.  Without a monitor, the prisoners cannot confirm that the device-generated audio is accurate.

    d)    There is only one computer in the Wende law library that visually impaired inmates may use to print documents.  It has been broken for several months.

**Lack of Instructions in Using Assistive Devices**

72.    Sullivan and Wende do provide some devices to assist visually impaired prisoners.  But there is no formal instruction in how to use the devices.  Instructions for the use

of vision-assistance devices do not exist, in audio or large-print format. The prisons do not provide prisoners with instructions in those forms. And the prison staff is not sufficiently knowledgeable to teach the inmates to use these devices.

73.    Since visually impaired prisoners are not provided with instruction and other assistance on how to use the computers and other electronic reading, writing, and magnifying devices, they are not effectively or reasonably accommodated in the law library or other programs, services, and activities for which the assistive devices are needed to be utilized.

**Recreational Activity**

74.    Wende and Sullivan prisoners are afforded a number of indoor and outdoor recreation opportunities. Visually impaired inmates, however, are not provided with accommodations that would allow them to safely engage in exercise and other recreational activities, thereby denying them equal, meaningful access to such programs. Instead, they are generally required to exercise in the same place and at the same time as the non-disabled inmates in general population.

75.    Visually impaired prisoners do not feel safe to move around in the presence of non-disabled prisoners who are vigorously exercising and are not aware or attentive to the fact that they are sharing resources and space with the visually impaired.

76.    Even the recreation equipment itself poses a danger to visually impaired prisoners. For example, they are provided with free weights, rather than weight machines, despite the significant danger that free weights could pose to a person who cannot see.

77.    Visually impaired prisoners are given the option for "sheltered recreation," but only once per week. And Defendants fail to provide suitable materials for visually impaired prisoners that would enable them to engage in non-yard recreation, such as large-print playing cards or other appropriate games.

**Communal Dining**

78.    While the general population at Wende eats its meals in the communal dining area, visually impaired and legally blind prisoners at Wende are not allowed to go to the facility mess hall to eat their meals. Instead, they are required to eat alone in their cells, often provided with cold food and in smaller portions than is available in the communal dining area.

**Reasonably Tailored Accommodations**

79.    Where Defendants have attempted to accommodate the disabilities of the visually impaired, they have often done so in ways that simply do not work. For example, at Sullivan some prisoners have been provided with magnifying glasses, even though they are completely blind and cannot use them.

80.    At Wende, all visually impaired prisoners are provided with canes, though not all require them. Wende officials have stated that the canes are used to identify the visually impaired prisoners and to differentiate them from fully sighted prisoners.

81.    Sometimes, the prisons act as if the prisoners have already received needed accommodations – glasses, for example – even though the prisoners never received them. This has resulted in prisoners having been classified as no longer visually impaired, even though they never received corrective lenses and remain legally blind or severely visually impaired in fact, if not in classification status.

## CLASS ACTION ALLEGATIONS

82.    Plaintiffs bring this action pursuant to Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all legally blind or severely visually impaired inmates, as defined by DOCCS Directive 2612 ¶¶ II.D and E, who are now, or will be, under the custody of DOCCS and housed in the SDU at Sullivan or part of the SDP at Wende (the "Class").

83.    The Class is so numerous that joinder of all members is impracticable.

    a)    The exact size of the Class is unknown, because the inmate populations in the SDU at Sullivan and SDP at Wende are continuously changing. The number of inmates in the Sullivan SDU and Wende SDP is, however, sufficiently large as to render joinder of all class members impracticable;

    b)    Joining all prisoners housed in the SDU at Sullivan or participating in the SDP at Wende would be further impracticable because they are each disabled, as defined by 29 U.S.C. § 705(20) and 42 U.S.C. § 12102, and thus to require each to participate individually in litigation, rather than through the representative process of a class action, would cause a needless and enormous drain on prison and Court resources;

    c)    Because all prisoners housed in the SDU at Sullivan or part of the SDP at Wende are disabled, as defined by 29 U.S.C. § 705(20) and 42 U.S.C. § 12102, in ways that severely impact their vision, their ability to pursue litigation on their own is severely impacted.

84.    The policies, practices, omissions, and conditions that form the basis of this complaint are common to all members, and the relief sought will apply to the entire class.

85.    The claims of the Plaintiffs are typical and are not in conflict with the interests and claims of the Class as a whole. All members of the Class are similarly affected by the Defendants' allegedly wrongful conduct as complained of herein.

86.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications that would establish incompatible standards of conduct for the Defendants.

87.    Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate injunctive and declaratory relief with respect to the Class as a whole.

88.    There are questions of law and fact common to the members of the Class, including whether Defendants have violated the ADA and the Rehabilitation Act, based on their failure to accommodate legally blind and severely visually impaired inmates in the following ways:

a)    Failing to provide or post prison forms in a manner legible or otherwise accessible to legally blind or severely visually impaired prisoners;

b)    Failing to provide assistive devices that would allow members of the Class to read various documents;

c)    Failing to provide meaningful access to the prisons' Resource Rooms and law libraries;

d)    Failing to provide meaningful access to equipment, devices, or other means to create typed or printed documents;

e)    Failing to make available sufficient classes, programming, recreational activities, and/or vocational training appropriate for the legally blind or severely visually impaired;

f)    Failing to make available safe transportation for trips outside the prisons;

g)    Failing to provide visually impaired inmates at Wende access to communal dining so that they do not have to eat alone in their cells; and

h)    Failing to provide accommodations tailored to each individual's disability.

89.    The Plaintiffs' interests are co-extensive and not in conflict with those of the Class. The Plaintiffs are capable of fairly and adequately representing the Class and protecting its interests.

90.    The Plaintiffs and the proposed Class are represented by The Legal Aid Society's Prisoners' Rights Project; and Paul, Weiss, Rifkind, Wharton & Garrison LLP. The Legal Aid Society is a legal services organization whose attorneys are experienced in class action litigation on behalf of prisoners and will adequately represent the Class. Through prior litigation, the Prisoners' Rights Project has secured court-ordered institutional reform within several DOCCS operated prisons. Paul, Weiss, Rifkind, Wharton & Garrison LLP is a national law firm experienced in class action litigation and will adequately represent the Class.

## STATEMENT OF CLAIMS

### COUNT ONE
**(Violations of the Americans with Disabilities Act; Against All Defendants)**

91.    Plaintiffs are qualified individuals with disabilities as defined in the ADA. They are all legally blind or severely visually impaired, which substantially limits the major life activity of seeing, and also affects other major life activities including reading, learning, performing manual tasks, walking, communicating and working.

92.    Plaintiffs have records of having such an impairment.

93.    As state prisoners, all Plaintiffs meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendants.  42 U.S.C. § 12102 (2); 42 U.S.C. § 12131(2); 29 U.S.C. § 794.

94.    Defendants discriminate against legally blind or severely visually impaired prisoners by failing to accommodate their disabilities to provide access to programs and services in at least the following areas:  educational, vocational, work, grievance, disciplinary proceedings, health services, and recreation.

95.    Defendants discriminate against Plaintiffs on the basis of their disabilities in violation of 42 U.S.C. § 12132

96.    Defendants are agents or officials of public entities and/or public entities as that term is defined under 42 U.S.C. § 12131(1)(B).

**COUNT TWO**
**(Violations of Section 504 of the Rehabilitation Act; Against All Defendants)**

97.    Plaintiffs are qualified individuals with disabilities as defined by the Rehabilitation Act.  They are all legally blind or severely visually impaired, which substantially limits the major life activity of seeing, and also affects other major life activities including reading, learning, performing manual tasks, walking, communicating and working.

98.    Plaintiffs have records of having such an impairment or are regarded as having such an impairment.

99.    As state prisoners, all Plaintiffs meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendant DOCCS. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2).

100.    Defendants discriminate against Plaintiffs solely on the basis of their disabilities by failing to accommodate their disabilities to provide access to prison educational, vocational, work, library and recreation programs, disciplinary proceedings, and grievance proceedings.

101.    DOCCS receives federal financial assistance.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor as follows:

102.    Certifying this action as a class action under Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2), with the Class as defined above.

103.    Adjudging and declaring that the policies, practices, omissions, and conditions described above are in violation of the rights, under the ADA and the Rehabilitation Act, of the Plaintiffs and the members of the Class.

104.    Permanently enjoining Defendants, their agents, employees, and all persons acting in concert with them from subjecting Plaintiffs and the members of the Class to the illegal policies, practices, omissions and conditions described above.

105.    Directing Defendants to perform individualized assessments of legally blind or severely visually impaired prisoners at Sullivan or Wende, to determine the extent of their abilities to participate in programs, services, and activities, and to determine the reasonable accommodations that these prisoners need in order to do so.

106.    Directing Defendants to take all necessary action to provide full access to DOCCS services and activities and a full range of programming options, including educational, vocational, and work programs, and accessible indoor and outdoor recreation, to prisoners at Sullivan and Wende who are legally blind or severely visually impaired.

107.    Awarding Plaintiffs reasonable attorneys' fees, costs, disbursements, and other litigation expenses, pursuant to 29 U.S.C. § 794(b) and 42 U.S.C. § 12205.

108.    Retaining jurisdiction over this case until Defendants have fully complied with the orders of this Court and there is a reasonable assurance that Defendants will continue to comply in the future.

109.    Ordering such other and further relief as the Court may deem just and proper.

Dated: New York, New York
   April 30, 2012

      PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

      Eric Alan Stone
      Daniel J. Kramer
      Asad I. Kudiya
      1285 Avenue of the Americas
      New York, New York 10019-6064
      (212) 373-3326
      estone@paulweiss.com
      dkramer@paulweiss.com
      akudiya@paulweiss.com

      Steven Banks, Attorney-in-Chief
      Veronica Vela
      Milton Zelermyer
      John Boston
      THE LEGAL AID SOCIETY
      Prisoners' Rights Project
      199 Water Street
      New York, New York 10038
      (212) 577-3530
      vvela@legal-aid.org
      mzelermyer@legal-aid.org
      jboston@legal-aid.org

      *Attorneys for Plaintiffs and the Proposed Class*

AFFIDAVIT OF SERVICE BY FIRST CLASS MAIL

STATE OF NEW YORK   )
                         ) ss.:
COUNTY OF NEW YORK  )

TREVOR J. HILL, being duly sworn. deposes and says:

    1. I am not a party to this action, am over 18 years of age and am employed by

Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New

York, New York 10019.

    2. On April 30, 2012, I served a true copy of the following: SECOND

AMENDED CLASS ACTION COMPLAINT  on the following:

Mr. Paul Ford
DIN 81-B-1297
Sullivan Correctional Facility
325 Riverside Drive
Fallsburg, NY 12733


Mr. Darrius Reid
c/o Margaret Reid
1159 E. 229 Drive. Apt. 2E
Bronx, NY 10466


Frederick Hongyee Wen
Assistant Attorney General
The Office of the Attorney General for the State of New York
120 Broadway
New York. NY 10271

3. I made such service by personally enclosing a true copy of the aforementioned document in a properly addressed prepaid wrapper and depositing it an official depository under the exclusive custody and care of the United States Postal Service in the State of New York.

Trevor J. Hill

Sworn to before me this
_30th_ day of April, 2012.

Notary Public

JAE HEE HAN
Notary Public  State of New York
No  01HA6230262
Qualified in Queens County
Commission Expires Nov 1,  2014